Steven Blair Jackson v. State of Maryland, No. 71, Sept. Term, 2015 Opinion by Battaglia, J.

**CRIMINAL PROCEDURE – DNA EVIDENCE – POSTCONVICTION REVIEW – MD. CODE ANN., CRIM. PROC. § 8-201 (2008 Repl. Vol.) – APPLICATION OF RES JUDICATA -** Court of Appeals held that Petitioner's 2015 petition for DNA testing, under Section 8-201 of the Criminal Procedure Article, was not barred by the doctrine of *res judicata* but the petition did not set forth sufficient basis to support the allegation that "a reasonable probability exists that the DNA testing has the scientific potential to produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction."

Circuit Court for Baltimore County, Maryland
Case No. 93CR4171
Argued: April 4, 2016

IN THE COURT OF APPEALS
OF MARYLAND

No. 71
September Term, 2015

STEVEN BLAIR JACKSON

v.

STATE OF MARYLAND

Battaglia*
Greene
Adkins
McDonald
Hotten
Wilner, Alan, (Retired,
Specially Assigned)

JJ.

Opinion by Battaglia, J.

Filed: June 23, 2016

*Battaglia, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

Petitioner, Stephen Blair Jackson, in 2015 filed a petition for DNA testing pursuant to Section 8-201 of the Criminal Procedure Article of the Maryland Code.[1] In his Petition, Jackson alleged that testing a piece of underwear for the presence of his DNA as well as testing of additional material collected on laboratory microscope slides, which remained from a Sexual Assault Forensics Exam ("SAFE") that had been performed on a victim, known as Patricia M., in 1993, "ha[ve] the potential to show that Petitioner's DNA is not on the complainant's underwear, evidence that would have been inconsistent with her undisclosed statements that he ejaculated and that she had not

---

[1] Section 8-201 of the Criminal Procedure Article provides, in relevant part:

> (b) *Filing of petition.* – Notwithstanding any other law governing postconviction relief, a person who is convicted of a crime of violence under § 14-101 of the Criminal Law Article may file a petition: (1) for DNA testing of scientific identification evidence that the State possesses that is related to the judgment of conviction; or (2) for a search by a law enforcement agency of a law enforcement data base or log for the purpose of identifying the source of physical evidence used for DNA testing.
>          \*      \*      \*

> (d)(1) *Findings requiring DNA testing.* – Subject to subsection (e) of this section, a court shall order DNA testing if the court finds that: (i) a reasonable probability exists that the DNA testing has the scientific potential to produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction or sentencing; and (ii) the requested DNA test employs a method of testing generally accepted within the relevant scientific community.
>          \*      \*      \*

> (k)(6) An appeal to the court of appeals may be taken from an order entered under this section.

All references to the Criminal Procedure Article are to the Maryland Code (2001, 2008 Repl. Vol., 2009 Supp.), unless stated otherwise.

showered or douched since then" and "would also clarify this issue by producing exculpatory or mitigating evidence." Jackson's Petition also requested that Touch DNA[2] be utilized in testing, because it could "provide exculpatory evidence that was not available in 2006."

In the underlying case Jackson had entered an Alford plea[3] to second degree rape of Patricia M.[4] in 1993.[5] Jackson thereafter filed numerous petitions for DNA testing, including a petition in 2005, which was granted;[6] the results of DNA testing done

---

[2] Touch DNA "refers to the genetic information recovered from epithelial (skin) cells left behind when a person makes contact with an object." Victoria Kawecki, *Can't Touch This? Making a Place for Touch DNA in Post-Conviction DNA Testing Statutes*, 62 Cath. U. L. Rev. 821, 829 (2013).

[3] An *Alford* plea is "one in which the individual retains the right to appellate review of evidence subject to a suppression motion but avoids going through the time and expense of a full trial. By pleading not guilty and agreeing to the proffer of stipulated evidence or an agreed statement of facts, an individual, like with a guilty plea, waives a jury trial and the right to confront witnesses but retains appellate review of the suppression decision." *Bishop v. State*, 417 Md. 1, 20, 7 A.3d 1074, 1085 (2010). *See also North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L.Ed.2d 162 (1970).

[4] Jackson was sentenced to twenty years' imprisonment with all but four years suspended and five years' supervised probation. On October 16, 1995, the Circuit Court suspended the balance of Jackson's sentence, and Jackson was released on probation. While on probation, Jackson was convicted of two counts of second degree rape in the Circuit Court for Anne Arundel County, and his probation was violated thereafter.

[5] Jackson and the State agree that an official transcript from the hearing does not exist and cannot be created.

[6] In the 2005 Petition, Jackson denied having sexual intercourse with Patricia M. and alleged that the single sperm head found on Patricia M. "may have been a remnant of previous consensual intercourse, rather than proof of ejaculation during the alleged assault." Jackson argued in his petition that the requested DNA testing of a single spermhead would be "probative in disproving the alleged victim's claim that the

(continued . . . )

pursuant to the 2005 Petition yielded inconclusive results.[7] Jackson then filed a petition for DNA testing in 2008,[8] which the Circuit Court denied. In 2009, Jackson filed a petition for post-conviction relief pursuant to the Uniform Postconviction Procedure Act, in which he alleged that he was actually innocent of the crime of rape; that the State withheld exculpatory evidence; that his guilty plea was not knowing, intelligent and voluntary; and that his trial counsel rendered ineffective assistance of counsel. Jackson's Petition was denied, but Jackson was permitted to file a belated Motion for Reconsideration of Sentence.

Jackson again filed a petition for DNA testing in 2013, which the Circuit Court denied. In his 2013 Petition, Jackson sought to have Patricia M.'s underwear tested using a "wide range of testing services including, STR[9], Y-STR[10], and mtDNA[11] that

---

( . . . continued)
defendant had sexual intercourse with her and that he ejaculated while doing so, and is probative of Defendant's claim that intercourse was not consummated in this case."

[7] The Forensic Identity Y-STR Analysis Laboratory Report stated "DNA results were obtained using Short Tandem Repeat (STR) analysis. . . . Based on these results, male DNA was not detected in the epithelial or sperm fraction of the micro #2 vaginal slide (FR06-0060-01.02EF/SF). Therefore, comparison to a reference sample cannot be made."

[8] In the 2008 Petition, Jackson alleged that advances had been made since 2005 that "give rise to a reasonable probability that additional testing may yield exculpatory evidence supporting Mr. Jackson's claim of innocence." Jackson requested the use of "Touch DNA testing" and claimed that "[t]his method of testing affords analysts a stronger likelihood of building a DNA profile than ever before".

[9] STR refers to Short Tandem Repeats, which are "very short repeating sequences of DNA that are three to seven bases long" which "make them highly discriminatory and useful when the DNA sample is partially degraded or fragmented." D.P. Lyle, Forensic Science 184-85 (2012).

(continued . . . )

conform to the 13 core CODIS loci used by the FBI." He argued that, "[a]dvances in the field of DNA Testing have been made since those tests were performed and give rise to a reasonable probability that additional testing will yield exculpatory evidence supporting Petitioner's claim of innocence. DNA Testing should further bolster Petitioner's claim of innocence since EXHIBIT C5 line 8[12] clearly shows, according to the victim, that Petitioner penetrated the vulva, ejaculated, and did not wear a condom." Jackson noted an appeal from the denial of his 2013 petition but later withdrew his appeal.

In June of 2015, Jackson filed a Petition for DNA testing, in which he alleged that DNA testing "has the potential to show that Petitioner's DNA is not on the complainant's underwear, evidence that would have been inconsistent with her undisclosed statements that he ejaculated and that she had not showered or douched since then" and "would also clarify this issue by producing exculpatory or mitigating evidence." Jackson's Petition

---

( . . . continued)

[10] Y-STR testing is a variation of STR testing that "can enable an analyst to identify the DNA of a male contributor to a mixed DNA sample" by testing "the polymorphic areas of the Y-chromosome possessed only by males." Paul Giannelli *et al*., Scientific Evidence, § 18.03[d], (5th ed. 2012).

[11] mtDNA refers to mitochondrial DNA, which is genetic material that is "essentially one long sequence at a single locus" that is inherited "solely from [an individual's] mother." Paul Giannelli *et al*., Scientific Evidence, § 18.02[b], (5th ed. 2012). Mitochondrial DNA "mutates rarely, is found in places where nuclear DNA does not exist, and is exceptionally hardy." D.P. Lyle, Forensic Science, 198 (2012).

[12] The reference to Exhibit C5 line 8 is to a portion of the Medical Examination and Report of Alleged Sexual Assault that was prepared as part of the SAFE exam performed on Patricia M. in 1993.

4

also requested that Touch DNA be utilized, because it could "provide exculpatory evidence that was not available in 2006." Judge Vicki Ballou-Watts of the Circuit Court for Baltimore County denied the Petition, thus giving rise to the appeal that is before us, in which we consider the following question:

> Did the circuit court err by denying Jackson the relief that he sought pursuant to the Maryland Criminal Procedure Article § 8-201; and did it further err by denying his request without a hearing?[13]

Initially, the State has moved to dismiss Jackson's appeal, arguing, among other issues,[14] that successive petitions for DNA testing are barred by Rule 4-709,[15] as well as by the doctrine of *res judicata*.

---

[13] Jackson noted a direct appeal pursuant to Section 8-201(k)(6) of the Criminal Procedure Article, which provides that "[a]n appeal to the court of appeals may be taken from an order entered under this section [8-201]."

[14] The State also argued that Jackson's appeal is untimely because Jackson's appeal is actually an appeal from the 2008 and 2013 Petitions. Because we determine that successive DNA petitions may be filed and that *res judicata* does not bar the filing of successive petitions, we need not address this issue.

[15] Rule 4-709 provides:
> (a) **When Required**. Except as otherwise provided in subsection (b)(2) of this Rule, the court shall hold a hearing if, from the petition, answer, and any response, the court finds that the petitioner has standing to file the petition and the petition is filed in the appropriate court, and finds one of the following:
> (1) specific scientific identification evidence exists or may exist that is related to the judgment of conviction, a method of DNA testing of the evidence may exist that is generally accepted within the relevant scientific community, and there is or may be a reasonable probability that the testing has the scientific potential to produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction or sentencing;

(continued . . . )

Section 8-201 of the Criminal Procedure Article, the statute in issue in the present case, does not bar, nor explicitly sanction, filing successive DNA petitions.[16] The

---

( . . . continued)

(2) if the State contends that it has been unable to locate the evidence, there is a genuine dispute as to whether the State's search was adequate;
(3) if the State contends that the evidence existed or may have existed but was destroyed, there is a genuine dispute whether the destruction was in conformance with any relevant governing protocols or was otherwise lawful;
(4) the State is unable to produce scientific evidence that the State was required to preserve pursuant to Code, Criminal Procedure Article, § 8-201(j)(1); or
(5) there is some other genuine dispute as to whether DNA testing or a DNA database or log search by a law enforcement agency should be ordered.

(b) **When Not Required**. (1) *For Denial of Petition*. The court shall deny the petition without a hearing if it finds that:
(A) the petitioner has no standing to request DNA testing or a search of a law enforcement agency DNA database or logs; or
(B) as a matter of law, the facts alleged in the petition pursuant to subsections (a)(2) and (3) of Rule 4-704 do not entitle the petitioner to relief under Code, Criminal Procedure Article, § 8-201.
(2) *For Grant of Petition*. The court may enter an order granting the petition without a hearing if the State and the petitioner enter into a written stipulation as to DNA testing or a DNA database or log search and the court is satisfied with the contents of the stipulation. An order for DNA testing shall comply with the requirements of Rule 4-710(a)(2)(B).

[16] A review of the landscape of other state statutes reveals that no state prohibits successive petitions; likewise, no state statute mandates consideration of successive petitions. State statutes generally are silent regarding consideration of successive petitions, as is ours, while a few provide specific conditions that must be met in order for the court to consider a successive petition.
    The majority of states have statutes that are silent regarding consideration of successive DNA petitions, like ours. *See* Ala. Code § 15-18-200 (2016); Alaska Stat. § 12.73.010 (2016); Ariz. Rev. Stat. Ann. § 13-4240 (2016); Cal. Penal Code § 1405 (2016); Conn. Gen. Stat. § 54-102kk (2016); Del. Code Ann. tit. 11, § 4504 (2016); D.C. Code § 22-4133 (2016); Fla. Stat. § 925.11 (2016); Ga. Code Ann. § 5-5-41 (2016); 725

(continued . . . )

Ill. Comp. Stat. 5/116-5 (2016); Ind. Code § 35-38-7-8 (2016); Iowa Code § 802.10 (2016); Kan. Stat. Ann. § 21-2512 (2016); Ky. Rev. Stat. Ann. § 422.285 (West 2016); La. Code Crim. Proc. Ann. art. 926.1 (2016); Me. Rev. Stat. tit. 15, § 2137 (2016); Mass. Gen. Laws ch. 278A, § 3 (2016); Mich. Comp. Laws § 770.16 (2016); Minn. Stat. § 590.01 (2016); Mo. Rev. Stat. § 547.035 (2016); Mont. Code Ann. § 46-21-110 (2015); Neb. Rev. Stat. § 29-4120 (2016); Nev. Rev. Stat. § 176.09183 (2015); N.H. Rev. Stat. Ann. § 651-D:2 (2016); N.J. Stat. Ann. § 2A:84A-32a (West 2016); N.M. Stat. § 31-1A-2 (2016); N.Y. Crim. Proc. Law § 440.30 (Consol. 2015); N.C. Gen. Stat. § 15A-269 (2016); N.D. Cent. Code § 29-32.1-15 (2016); Okla. Stat. tit. 22, § 1373.2 (2016); Or. Rev. Stat. Ann. § 138.692 (West 2016); 42 Pa. Stat. Ann. § 9543(a) (West 2016); R.I. Gen. Laws § 10-9.1-12 (2016); S.D. Codified Laws § 23-5B-1 (2016); Tenn. Code Ann. § 40-30-303 (2016); Tex. Code Crim. Proc. Ann. art. 64.01 (West 2015); Utah Code Ann. § 78B-9-301 (West 2016); Va. Code Ann. § 19.2-327.1 (2016); Wash. Rev. Code § 10.73.170 (2016); W. Va. Code § 15-2B-14 (2016); Wis. Stat. § 974.07 (2016).

Other states provide conditions for the filing of successive petitions. In Wyoming, for example, a successive petition is only considered "where there is clear and compelling evidence that the evidence sought to be tested was wrongfully withheld from the movant by the state or its agents." Wyo. Stat. Ann. § 7-12-314 (2015).

Vermont conditions the consideration of a successive petition on the availability of more advanced DNA technology. A Vermont court "shall not be required to entertain a second or successive petition for similar relief on behalf of the same petitioner unless it appears the petition will be assisted by the availability of more advanced DNA technology." Vt. Stat. Ann. tit. 13 § 5570(a) (2016). The statute, however, permits a court to hear a successive petition "if it determines that doing so would serve the interests of justice." *Id.* at § 5570(b).

Other state statutes that address the efficacy of successive petitions require that the petitioner assert new or different grounds for relief. Mississippi provides that an order

> dismissing the petitioner's motion or otherwise denying relief under this article is a final judgment and shall be conclusive until reversed. It shall be a bar to a second or successive motion under this article. . . . excepted are those cases in which the petitioner has filed a prior petition and has requested DNA testing under this article, providing the petitioner asserts new or different grounds for relief related to DNA testing not previously presented or the availability of more advanced DNA technology.

Miss. Code Ann. § 99-39-23(6) (2016). In South Carolina, a petitioner may "file a successive application, provided the applicant asserts grounds for DNA testing which for sufficient reason was not asserted or was inadequately raised in the original, supplemental, or amended application." S.C. Code Ann., § 17-28-50 (2016). Hawaii's

legislative history of Section 8-201 suggests, however, that the Legislature intended that successive petitions for DNA testing can be filed.

In 2001, the General Assembly enacted Chapter 418 of the Laws of 2001, which later became codified as Section 8-201 of the Criminal Procedure Article. Senate Bill 694 from which Chapter 418 emanated had been introduced as a response to a nationwide trend in which various states and the federal government had "considered establishing

---

( . . . continued)

statute mandates a court to "adjudicate a successive motion or motions under this part; provided that the defendant asserts new or different grounds for relief, including but not limited to factual, scientific, or legal arguments not previously presented, or the availability of more advanced DNA technology" if the defendant had previously filed a motion for DNA testing. Haw. Rev. Stat. § 844D-130(a) (2016). The Hawaii statute, like Vermont's statute, permits consideration of "successive motions if the interests of justice so require." *Id*. at § 844D-130(b).

Consideration of issues raised in a successive petition in some state statutes is precluded explicitly, however, if the issues have been decided previously. Arkansas's statute provides that "[t]he court may summarily deny a second or successive petition for similar relief on behalf of the same petitioner and may summarily deny a petition if the issues raised in it have previously been decided by the Arkansas Court of Appeals or the Arkansas Supreme Court in the same case." Ark. Code Ann. § 16-112-205(d) (2015); Idaho's statute conditions consideration of a successive petition on a similar premise:

> [a]ny ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief may not be the basis for a subsequent application, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental, or amended application.

Idaho Code Ann. § 19-4908 (2016). Ohio's statute precludes consideration of a subsequent petition when "a prior definitive DNA test has been conducted regarding the same biological evidence that the offender seeks to have tested." Ohio Rev. Code Ann. § 2953.74 (2016). Colorado's statute only provides, "[t]he court may deny a second or subsequent motion requesting relief pursuant to this section." Colo. Rev. Stat. § 18-1-412(3) (2016).

procedures for postconviction DNA identification testing for certain felony offenses."

Revised Fiscal Note, Department of Fiscal Services, Bill File S.B. 694. DNA testing had

been recognized as a "law enforcement tool, used to establish either the guilt or

innocence of suspected or convicted offenders", which also could be utilized to exonerate

defendants who were "wrongfully convicted or sentenced." *Id.* Chapter 418, a portion of

which was later codified as Section 8-201(c), provided in relevant part that:

> (c) Subject to subsection (d)[17] of this section, a court shall order DNA testing if the court finds that:
> (1)(i) The scientific identification evidence was not previously subjected to the DNA testing that is requested for reasons beyond the control of the petitioner; or
> (ii) The type of DNA test being requested is different from tests previously conducted and would have a reasonable likelihood of providing a more probative result than tests previously conducted;
> (2) The scientific identification evidence was secured as provided in subsection (i) of this section, in relation to the crime for which the petitioner was convicted;
> (3) The scientific identification evidence to be tested has been subject to a chain of custody as provided under subsection (i) of this section that is sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material aspect;
> (4) Identity was an issue in the trial that resulted in the petitioner's conviction;
> (5) A reasonable probability exists that the DNA testing has the scientific potential to produce results materially relevant to the petitioner's assertion of innocence; and
> (6) The requested DNA test employs a method of testing generally accepted within the relevant scientific community.

2001 Maryland Laws, Chapter 418.

---

[17] Subsection (d), in 2001, provided that: "(1) A petitioner shall notify the state in writing of the filing of a petition under this section. (2) The state may file a response to the petition within 15 days after notice of the filing or within the time that the court orders."

That language of Section 8-201(c)(1) through (4) that would have precluded various successive DNA testing petitions was removed when Chapter 240 of the Laws of 2003 was enacted. Chapter 240 deleted all reference to prior petitions and replaced former Section 8-201(c)(1) – (6) with the following:

> (c) Subject to subsection (d)[18] of this subtitle, a court shall order DNA testing if the court finds that:
> (1) a reasonable probability exists that the DNA testing has the scientific potential to produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction or sentencing; and
> (2) the requested DNA test employs a method of testing generally accepted within the relevant scientific community.

2003 Maryland Laws, Chapter 240. Easing restrictions on successive DNA petitions was in direct contrast to what the General Assembly had done in 1995, when Chapter 110 of the Laws of 1995 limited the number of successive petitions under the Uniform Post Conviction Procedure Act.[19]

---

[18] Subsection (d) in 2003 remained the same as it had been in 2001.

[19] Chapter 110 of the Laws of 1995, which is now codified at Section 7-103 of the Criminal Procedure Article, Maryland Code (2001, 2008 Repl. Vol., 2015 Supp.) provided, in relevant part:
> 645 A
> (a)(1) Subject to the provisions of paragraphs (2) and (3) of this subsection, any person convicted of a crime and either incarcerated under sentence of death or imprisonment or on parole or probation, including any person confined or on parole or probation as a result of a proceeding before the District Court who claims that the sentence or judgment was imposed in violation of the Constitution of the United States or the Constitution or laws of this State, or that the court was without jurisdiction to impose the sentence, or that the sentence exceeds the maximum authorized by law, or that the sentence is otherwise subject to collateral attack upon any ground of alleged error which would otherwise be available under a writ of habeas

(continued . . . )

In enacting Rule 4-704[20] in 2009, we recognized that successive petitions filed

post conviction could be filed without any exclusion for successive DNA petitions:

---

( . . . continued)
     corpus, writ of coram nobis, or other common-law or statutory remedy,
may institute a proceeding under this subtitle in the circuit court for the
county to set aside or correct the sentence, provided the alleged error has
not been previously and finally litigated or waived in the proceedings
resulting in the conviction, or in any other proceeding that the petitioner has
taken to secure relief from his conviction.
     (2)(I) A person may file only one petition, arising out of each trial, for relief
under this subtitle.

1995 Maryland Laws, Chap. 110. The Maryland Uniform Post-Conviction
Procedure Act is codified at Section 7-101 *et seq*. of the Criminal Procedure
Article, Maryland Code (2001, 2008 Repl. Vol., 2015 Supp.).

[20] Rule 4-704 in its entirety provides:
     (a) **Content**.
     (1) *In General*. Each petition shall state:
     (A) the petitioner's name and, if applicable, place of confinement and
inmate identification number;
     (B) the court in which the charging document was filed, the date and place
of trial, each offense of which the petitioner was convicted, and the
sentence imposed for each offense;
     (C) a description of all previous proceedings in the case, including direct
appeals, motions for new trial, habeas corpus proceedings, post-conviction
proceedings, and all other collateral proceedings, including (i) the court in
which each proceeding was filed, (ii) the case number of each proceeding,
(iii) the determinations made in each proceeding, and (iv) the date of each
determination; and
     (D) a statement regarding whether the petitioner is able to pay the cost of
testing and to employ counsel. If indigent, the petitioner may request that
the court appoint counsel.
     (2) *Request for DNA Testing*. If the request is for DNA testing of scientific
identification evidence, the petition shall contain:
     (A) a description of the specific scientific identification evidence that the
petitioner seeks to have tested;
     (B) a statement of the factual basis for the claims that (i) the State possesses
that evidence or is able to acquire it from a third party on its own initiative
                        (continued . . . )

11

(a) **Content**.

(1) *In General*. Each petition shall state:

(C) a description of all previous proceedings in the case, including direct appeals, motions for new trial, habeas corpus proceedings, post-conviction proceedings, and all other collateral proceedings, including (i) the court in which each proceeding was filed, (ii) the case number of each proceeding, (iii) the determinations made in each proceeding, and (iv) the date of each determination[.]

---

( . . . continued)

or by court order, (ii) the evidence is related to the conviction, including a concise description of how the evidence is related to the conviction, and (iii) a reasonable probability exists that the requested DNA testing has the scientific potential to produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction or sentencing; and

(C) to the extent known: (i) a description of the type of DNA testing the petitioner seeks to employ and (ii) a statement of the basis for a claim that the DNA testing method has achieved general acceptance within the relevant scientific community.

(3) Request for Search of Law Enforcement Database or Log. If the request is for a search of a law enforcement agency database or log for the purpose of identifying the source of physical evidence used for DNA testing, the petition shall:

(A) identify with particularity the law enforcement agency whose database or log is to be searched; and

(B) state the factual basis for any claim that there is a reasonable probability that a search of the database or log will produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction or sentencing or will identify the source of physical evidence used for DNA testing of a law enforcement database or log.

(b) **Amendment**. Amendments to the petition shall be freely allowed in order to do substantial justice. If an amendment is made, the court shall allow the State a reasonable opportunity to respond to the amendment.

(c) **Withdrawal**. On motion of a petitioner, the court may grant leave for the petitioner to withdraw a petition. If the motion is filed before the court orders DNA testing or a search of a law enforcement agency DNA database or log, the leave to withdraw shall be without prejudice. If such an order has been issued, the leave to withdraw shall be with prejudice unless the court, for good cause, orders otherwise.

Filing successive DNA testing petitions, thus, was anticipated by our adoption of Rule 4-704 that implemented Section 8-201(c), as amended.

The issue of whether the doctrine of *res judicata* could bar the filing of successive petitions, moreover, was raised during the Rules Committee process for Rule 4-704. In a colloquy between the Honorable Alan Wilner, the Chair of the Rules Committee, and Richard Karceski, a member of the Rules Committee, *res judicata* as a bar was discussed:

> [KARCESKI]: Pursuant to section (c), if there is a withdrawal of the petition before the court orders DNA testing or a search of a database, it should be without prejudice. However, if the order has been issued, the leave to withdraw shall be with prejudice unless the court for good cause orders otherwise. When the Subcommittee discussed this, the conclusion was that there is no limit to the number of petitions that can be filed. Any person can file more than one petition.
>
> [WILNER]: The statute does not address this as comprehensively as the Uniform Post Conviction Act.
>
> [KARCESKI]: If the petitioner gets to the point where the court orders the testing, and the judge does not want to go forward with the case, the petitioner can file leave to withdraw the petition. Does this pertain only to the instant petition or does it preclude the petitioner from refiling ever again?
>
> [WILNER]: I am not sure as to whether the concepts of *res judicata* would apply to a criminal case.

Minutes of the Standing Committee on Rules, May 15, 2009, at 65-66 (on file with the Court of Appeals Standing Committee on Rules of Practice and Procedure).

The effect of *res judicata*, or "a thing adjudicated," is that it acts as a direct estoppel:

> if (1) the parties in the present litigation are the same or in privity with the parties to the earlier action; (2) the claim in the current action is identical to

13

the one determined in the prior adjudication; and (3) there was a final judgment on the merits in the previous action.

*Powell v. Breslin*, 430 Md. 52, 64, 59 A.3d 531, 538 (2013). The "overarching purpose" of the doctrine of *res judicata* is "judicial economy." *Id*. The doctrine "avoids the expense and vexation attending multiple lawsuits, conserves the judicial resources and fosters reliance on judicial action by minimizing the possibilities of inconsistent decisions." *Anne Arundel County Bd. of Educ. v. Norville*, 390 Md. 93, 107, 887 A.2d 1029, 1037 (2005).

Heretofore we have not addressed the application of *res judicata* to successive petitions for DNA testing, nor has there been much discussion of the subject in other state courts. We, however, do find persuasive the reasoning of the intermediate appellate court of Ohio in *State v. Ayers*, 923 N.E.2d 654 (Ohio Ct. App. 2009). In that case, Ayers appealed the denial of his second successive petition for DNA testing; the trial court had applied *res judicata* as a bar. The Ohio intermediate appellate explored the fact that the Ohio General Assembly had amended the DNA testing statute and thereby had lowered the threshold for DNA testing in order to enable more robust opportunities to secure DNA testing:

> In 2006, the General Assembly amended Ohio's DNA testing statutes. The amendments, among other things, made postconviction DNA testing more available to inmates and lowered the outcome-determinative standard for establishing entitlement to DNA testing. Under the prior version of R.C. 2953.71(L), "outcome determinative" meant that had "the results of DNA testing been presented at the trial * * * and been found relevant and admissible with respect to the felony offense for which the inmate * * * is requesting the DNA testing * * * no reasonable factfinder would have found the inmate guilty of that offense."

Under the amended statute, "'outcome determinative' means that had the results of DNA testing of the subject inmate been presented at the trial * * * and been found relevant and admissible with respect to the felony offense for which the inmate * * * is requesting the DNA testing * * *, *and had those results been analyzed in the context of and upon consideration of all available admissible evidence related to the inmate's case * * *, there is a strong probability* that no reasonable factfinder would have found the inmate guilty of that offense." (Emphasis added.) R.C. 2953.71(L).

The addition of the words "strong probability," among others, in the current version of R.C. 2953.71(L), in essence lowers the definition of "outcome determinative" from a showing of innocence beyond a reasonable doubt to one of clear and convincing evidence.

Although there is no legislative statement of intent in the amended R.C. 2953.71(L), there can be no doubt that the rise of DNA testing as an investigative tool prompted the General Assembly to lower the statutory standard for what constitutes "outcome determinative." The United States Department of Justice, Office of Justice Programs, has recognized that "DNA technology has become one of the most powerful tools to ensure that justice is done through our criminal justice system. It helps identify offenders and eliminate innocent suspects. Increasingly, DNA is also used to exonerate the wrongly convicted." See Ritter, Postconviction DNA Testing Is at Core of Major NIJ Initiatives (Mar.2009), National Institute of Justice Journal, No. 262.1 And the United States Supreme Court recently stated in Dist. Attorney's Office v. Osborne (2009), —— U.S. ——, ——, 129 S.Ct. 2308, 2316, 174 L.Ed.2d 38:

> Modern DNA testing can provide powerful new evidence unlike anything known before. Since its first use in criminal investigations in the mid–1980s, there have been several major advances in DNA technology, culminating in STR technology. It is now often possible to determine whether a biological tissue matches a suspect with near certainty. While of course many criminal trials proceed without any forensic and scientific testing at all, there is no technology comparable to DNA testing for matching tissues when such evidence is at issue. DNA testing has exonerated wrongly convicted people, and has confirmed the convictions of many others.

(Citations omitted.) The United States Supreme Court has stated that the "ultimate objective" of our system of criminal law is that "the guilty be convicted and the innocent go free." Herring v. New York (1975), 422 U.S. 853, 862, 95 S.Ct. 2550, 45 L.Ed.2d 593. If DNA testing has the proven

15

ability to "exonerate[ ] wrongly convicted people," we can perceive no viable argument that matters of judicial economy should supersede the law's never-ending quest to ensure that no innocent person be convicted. The refinement of DNA testing has shown that law and science are intersecting with increasing regularity. When scientific advances give the courts the tools to ensure that the innocent can go free, those advances in science will necessarily dictate changes in the law. See, e.g., Pickett v. Brown (1983), 462 U.S. 1, 17, 103 S.Ct. 2199, 76 L.Ed.2d 372, fn. 6 (noting that "recent advances" in blood testing have dramatically reduced the possibility of false paternity claims).

The Ohio General Assembly has plainly embraced this notion by lowering the standard required to show that DNA testing can be outcome determinative.

*Id*. at 658-59. In a powerful gesture about the importance of DNA testing, the Ohio Court

held that *res judicata* does not bar successive DNA testing petitions in that state:

Given the efficacy of DNA testing as an investigative tool in criminal cases, we conclude for purposes of res judicata that DNA testing is a "specialized situation" in which the fear of wrongful conviction outweighs any judicial economy concerns.

*Id*. at 659. As a result, the Ohio intermediate appellate court determined that although *res judicata* would bar successive post-conviction petitions in Ohio, it would not bar successive DNA testing petitions.[21]

In Maryland, like in Ohio, the General Assembly in 2003 lowered the threshold enacted in 2001 to determine when DNA testing should be ordered. In 2001, the standards governing when DNA testing could be ordered were rigorous:

---

[21] We are not deciding the issue of whether *res judicata* would bar successive post-conviction petitions, because we address only the issue of whether the doctrine bars successive DNA testing petitions.

16

(1)(i) The scientific identification evidence was not previously subjected to the DNA testing that is requested for reasons beyond the control of the petition; or

(ii) The type of DNA test being requested is different from tests previously conducted and would have a reasonable likelihood of providing a more probative result than tests previously conducted;

(2) The scientific identification evidence was secured as provided in subsection (i) of this section, in relation to the crime for which the petitioner was convicted;

(3) The scientific identification evidence to be tested has been subject to a chain of custody as provided under subsection (i) of this section that is sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material aspect;

(4) Identity was not an issue in the trial that resulted in the petitioner's conviction;

(5) A reasonable probability exists that the DNA testing has the scientific potential to produce results materially relevant to the petitioner's assertion of innocence; and

(6) The requested DNA test employs a method of testing generally accepted within the relevant scientific community.

In 2003 when the statute was amended, the standards were lowered to that which it now reflects:

(c) Subject to subsection (d) of this section, a court shall order DNA testing if the court finds that:

(1) a reasonable probability exists that the DNA testing has the scientific potential to produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction or sentencing; and

(2) the requested DNA test employs a method of testing generally accepted within the relevant scientific community.

We already have recognized that the 2003 amendment relaxed the standard for entitlement to DNA testing in *Gregg v. State*, 409 Md. 698, 711-12, 976 A.2d 999, 1008-07 (2009), when we stated that:

[t]he 2003 amendment also relaxed the standard the petitioner must meet to establish entitlement to testing: whereas former subsection (c)(5) required

17

the petitioner to show that "a reasonable probability exists that the DNA testing has the scientific potential to produce results materially relevant to the petitioner's assertion of innocence," the amended subsection (c) requires the petitioner to demonstrate a reasonable probability "that the DNA testing has the scientific potential to produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction or sentencing [.]" The 2003 amendment to subsection (c) did not amend the directive that "the court shall order DNA testing," so long as the required findings of that subsection are made (and the petitioner has complied with the notice requirement of subsection (d)).

Our legislative history with respect to the standard that must be met in order to enable DNA testing to exonerate the innocent, thus, mirrors that of Ohio, and we agree with the Ohio intermediate appellate court that *res judicata*, ordinarily, should not bar successive petitions for DNA testing. We, therefore, deny the State's Motion to Dismiss.

Jackson asks that we grant his 2015 Petition for DNA testing or remand to the Circuit Court for a hearing on the Petition. In his 2015 Petition for DNA testing, Jackson alleged that testing of a piece of Patricia M.'s underwear for the presence of his DNA, as well as testing of additional material collected on laboratory microscope slides, which remained from a SAFE exam that had been performed on Patricia M., "ha[ve] the potential to show that Petitioner's DNA is not on the complainant's underwear, evidence that would have been inconsistent with her undisclosed statements that he ejaculated and that she had not showered or douched since then" and "would also clarify this issue by producing exculpatory or mitigating evidence." Jackson's Petition also requested that Touch DNA be utilized in testing, because it could "provide exculpatory evidence that was not available in 2006."

18

Jackson's counsel attempted to clarify Jackson's 2015 Petition before us at oral argument when she stated:

> Under Jackson's theory of the events that night, Jackson did not take her clothing off and that she did. So, if she took her clothing off, then only her DNA would be shed on the underwear and there would be none of his DNA on the underwear and that would support his claim that he never took her clothing off and never touched her in that way. He wants to have the underwear tested to show that his DNA is not on the underwear because that would exculpate him. . . . He's now arguing that he did not have sex with her, that they were engaged in foreplay, that she told him to stop and that he stopped and that the purpose of testing the underwear is that she took her clothing off, that only her DNA is on the underwear. He didn't touch her underwear. He didn't force her to take her clothing off. If he hadn't taken her underwear off, then his DNA wouldn't be on it. That's why he wants the underwear tested.

In rebuttal argument in response to the State's claim that Jackson did not sufficiently clarify his reasons for testing the underwear, Jackson's counsel stated:

> Additionally, while Petitioner did argue that the absence of his DNA on her underwear was specifically talking about semen that doesn't change the fact that her underwear could produce exculpatory evidence not just because of the dispute about who took her clothing off but because she alleges that he raped her and that she put her underwear on. The GMBC report is clear that she put the underwear back on and she immediately left the home and she had someone take her to the hospital so that underwear would certainly have his DNA on it regardless of whether or not he took it off of her.

Judge Ballou-Watts denied Jackson's 2015 Petition without a hearing, pursuant to Rule 4-709, when she ordered:

> Now upon consideration of Petitioner Steven Jackson's 'Petition for DNA Testing Pursuant to MD Code Crim. Proc. Art., § 8-201,' the State's Answer, a review of the Court's Memorandum Opinion and Order denying Post Conviction Relief (Docket No. 37004), Maryland Rule 4-709 and this Court's inability to find that there is a reasonable probability that the requested testing has the scientific potential to produce exculpatory or

19

mitigating evidence relevant to a claim of wrongful conviction or sentencing, it is this 26th day of June, 2015, by the Circuit Court of Baltimore County: **ORDERED** that the "Petition for DNA Testing Pursuant to MD Code Crim. Proc. Art. 8-201" be and it is hereby **DENIED** without a hearing.

Section 8-201(c) does provide the standard to be utilized to determine when DNA testing should be ordered, as Judge Ballou-Watts recognized:

> (c) Subject to subsection (d) of this section, a court shall order DNA testing if the court finds that:
> (1) a reasonable probability exists that the DNA testing has the scientific potential to produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction or sentencing; and
> (2) the requested DNA test employs a method of testing generally accepted within the relevant scientific community.

Whether a hearing must be held on a petition filed under Section 8-201 is governed by Rule 4-709, which provides:

> (a) **When Required**. Except as otherwise provided in subsection (b)(2) of this Rule, the court shall hold a hearing if, from the petition, answer, and any response, the court finds that the petitioner has standing to file the petition and the petition is filed in the appropriate court, and finds one of the following:
> (1) specific scientific identification evidence exists or may exist that is related to the judgment of conviction, a method of DNA testing of the evidence may exist that is generally accepted within the relevant scientific community, and there is or may be a reasonable probability that the testing has the scientific potential to produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction or sentencing;
> (2) if the State contends that it has been unable to locate the evidence, there is a genuine dispute as to whether the State's search was adequate;
> (3) if the State contends that the evidence existed or may have existed but was destroyed, there is a genuine dispute whether the destruction was in conformance with any relevant governing protocols or was otherwise lawful;

20

(4) the State is unable to produce scientific evidence that the State was required to preserve pursuant to Code, Criminal Procedure Article, § 8-201(j)(1); or

(5) there is some other genuine dispute as to whether DNA testing or a DNA database or log search by a law enforcement agency should be ordered.

(b) **When Not Required**. (1) *For Denial of Petition*. The court shall deny the petition without a hearing if it finds that:

(A) the petitioner has no standing to request DNA testing or a search of a law enforcement agency DNA database or logs; or

(B) as a matter of law, the facts alleged in the petition pursuant to subsections (a)(2) and (3) of Rule 4-704 do not entitle the petitioner to relief under Code, Criminal Procedure Article, § 8-201.

(2) *For Grant of Petition*. The court may enter an order granting the petition without a hearing if the State and the petitioner enter into a written stipulation as to DNA testing or a DNA database or log search and the court is satisfied with the contents of the stipulation. An order for DNA testing shall comply with the requirements of Rule 4-710(a)(2)(B).

Essentially, then, under the Statute and the Rule, a petitioner may be entitled to a hearing if he or she has standing, and if "there may be a reasonable probability" that the acceptable DNA testing method has "the scientific potential to produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction or sentencing".

In applying the standard, we recognize that Jackson and the State agree that an official transcript of Jackson's Alford plea hearing does not exist and cannot be created. Jackson, however, in his Motion for Reduction of Sentence filed in 1994, which he ratified in his brief before us, recounted what the State recited in the Alford plea colloquy regarding what would have been proven were the case to have gone to trial:

The Motion [for Reduction of Sentence] recapitulates that in support of the plea, the State advised the court that on October 19, 1993, the Defendant invited the complaining witness, Patricia M., back to his house after the couple had been out for drinks at two (2) bars. The State advised the court that once in the Defendant's bedroom, the Defendant told the complaining

21

witness to be a good girl your mine, put your arms up and that the Defendant then proceeded to push the complaining witness on to the bed where he took the complaining witness' clothing off and then engaged in vaginal sex by inserting his penis into the complaining witnesses' vagina. The State advised the court that the complainant continuously told the Defendant to stop yet the Defendant persisted. The State relied on a police report prepared by Officer Alexander. . . . In said report the complaining witness was unsure if the Defendant ejaculated or not.

We evaluate whether Touch DNA testing of Patricia M.'s underwear and of laboratory microscope slides left from the SAFE exam could or would have had the scientific potential with a reasonable probability to produce exculpatory evidence of his wrongful conviction for second degree rape. In so doing, we determine that Jackson's 2015 Petition was properly denied without a hearing by the Circuit Court Judge, albeit without her including factual findings; we choose not to remand for inclusion of further findings, however, because of the obvious futility of Jackson's assertions.

A conviction for second degree rape in 1993, and now, requires vaginal intercourse "by force or threat of force against the will and without the consent of the victim[.]" *State v. Rusk*, 289 Md. 230, 240, 424 A.2d 720, 725 (1981). The facts that would have been presented at trial were that Patricia M. continuously told Jackson to stop but Jackson persisted in having vaginal intercourse with her, after he had pushed Patricia M. down on the bed and overcome continuous resistance to have vaginal intercourse with her. Saying no means no, even were the intercourse to have begun consensually, as we noted in *State v. Baby*, 404 Md. 220, 260, 946 A.2d 463, 486-87 (2008).

None of Jackson's assertions in his 2015 Petition, in which he requested Touch DNA testing of underwear and testing of laboratory microscope slides, would have

produced evidence which would have exculpated him of second degree rape under the standard of Section 8-201(c). We, therefore, affirm the denial of Jackson's 2015 Petition for DNA testing.

**ORDER OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. COSTS IN THIS COURT TO BE PAID BY PETITIONER.**