*John Orlando Satterfield v. State of Maryland*, Misc. No. 10, September Term, 2022. Opinion by Hotten, J.

**MD. CODE ANN., CRIMINAL PROCEDURE ARTICLE § 8-201 – POST-CONVICTION DNA TESTING – EXCULPATORY EVIDENCE**

Criminal Procedure Article § 8-201(d)(1) of the Maryland Code provides that a person convicted of a crime of violence is entitled to post-conviction DNA testing, upon a showing that "a reasonable probability exists that the DNA testing has the scientific potential to produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction or sentencing[]" and "the requested DNA test employs a method of testing generally accepted within the relevant scientific community."  Petitioner failed to demonstrate that there was a reasonable probability that the results of any DNA testing would be exculpatory or mitigating.  As such, the circuit court properly denied Petitioner's petition for post-conviction DNA testing.

**MARYLAND RULES 4-701 *ET SEQ.* – POST-CONVICTION DNA TESTING – PROCEDURAL REQUIREMENTS UNDER MD. CODE ANN., CRIMINAL PROCEDURE ARTICLE § 8-201**

"Maryland Rules 4-701 *et seq.* govern post-conviction DNA testing procedures." *Edwards v. State*, 453 Md. 174, 189 n.12, 160 A.3d 642, 651 n.12 (2017); Md. Rule 4-701 ("The Rules in this Chapter apply to proceedings filed under [Md.] Code [Ann.], Criminal Procedure Article, § 8-201.").  The Supreme Court of Maryland held that the circuit court: (1) was not required to hold a hearing prior to denying Petitioner's petition for post-conviction DNA testing under Maryland Rule 4-709(b)(1)(B); (2) was not required to consider Petitioner's reply to the State's answer nor was Petitioner entitled to submit a reply under Maryland Rule 4-707(a); (3) failed to comply with Maryland Rule 4-709(e); however, remand would be futile, *Jackson v. State*, 448 Md. 387, 411, 139 A.3d 976, 990 (2016).  Accordingly, the Supreme Court affirmed the circuit court's denial of Petitioner's petition for post-conviction DNA testing.

Circuit Court for Baltimore County
Case No.: 03-K-06-004604
Argued: February 3, 2023

IN THE SUPREME COURT

OF MARYLAND*

Misc. No. 10

September Term, 2022

_____

JOHN ORLANDO SATTERFIELD

v.

STATE OF MARYLAND

_____

Fader, C.J.,
Watts,
Hotten,
Booth,
Biran,
Gould,
Eaves,

JJ.

_____

Opinion by Hotten, J.

_____

Filed: April 24, 2023

Pursuant to the Maryland Uniform Electronic Legal Materials
Act (§§ 10-1601 et seq. of the State Government Article) this
document is authentic.



Gregory Hilton, Clerk

*During the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals to the Supreme Court of Maryland. The name change took effect on December 14, 2022.

The Post-Conviction DNA Testing Statute, Md. Code Ann., Criminal Procedure ("Crim. Proc.") § 8-201, allows persons convicted of a crime of violence to file a petition: "(1) for DNA testing of scientific identification evidence that the State possesses that is related to the judgment of conviction[]" or "(2) for a search by a law enforcement agency of a law enforcement data base or log for the purpose of identifying the source of physical evidence used for DNA testing." A circuit court is required to order DNA testing of such evidence if two conditions are met. *See id.* § 8-201(d). First, the petitioner must demonstrate that "a reasonable probability exists that the DNA testing has the scientific potential to produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction or sentencing[.]" *Id.* § 8-201(d)(1)(i). Second, "the requested DNA test [must] employ[] a method of testing generally accepted within the relevant scientific community." *Id.* § 8-201(d)(1)(ii). If the circuit court denies the petition, the petitioner can directly appeal to this Court. *Id.* § 8-201(k)(6).

In this case, Petitioner, John Orlando Satterfield, was convicted of fourteen criminal offenses, including first-degree murder, and sentenced to life imprisonment plus 150 years. Pursuant to Crim. Proc. § 8-201(b)(1), Petitioner filed a Petition for Post-Conviction DNA Testing (the "Petition"). The Circuit Court for Baltimore County denied the Petition without a hearing or an explanation. On appeal, Petitioner seeks our review of the circuit court's denial of his Petition, as well as the circuit court's decision not to conduct a hearing or allow the opportunity to reply to the State's answer to his Petition. For the reasons outlined below, we shall affirm the circuit court's denial.

## FACTS AND PROCEDURAL BACKGROUND

### Background

The testimony at trial established the following. On September 8, 2006, at approximately 9:30 p.m., Randy Hudson, also known as "Scooby," drove to Dundalk located in Baltimore County to pick up his daughter from the home of her grandparents, Anna and Eric Fountain. Mr. Hudson parked behind the house. As Mr. Hudson unlocked the back door to enter the home, he was "approached from behind by someone who grabbed him [around] the throat."

Mr. Hudson testified that the man had "big arms[,]" but was unable to describe him because the man had "a shirt pulled over his face." The man pushed Mr. Hudson into a nearby alley where two other men appeared. Mr. Hudson testified that the men "were wearing Yankees baseball caps[]" and were armed. The men demanded money from Mr. Hudson. According to Mr. Hudson, the men "beat him, [] took $3,000" from him, and asked for "the rest" of his money.

Ms. Fountain testified that she and her granddaughter were sleeping in the living room when a noise inside the house awakened her. According to Petitioner's description of Ms. Fountain's trial testimony, two men "burst into her home, neither of whom [were] Petitioner." The men yelled at Ms. Fountain, "pointed a gun at her, told her not to look at them, and took her cell phone." The two men ran up and down her steps a few times until they went back outside. They subsequently returned, "dragg[ing] [Mr. Hudson] into the house, and up the stairs." Ms. Fountain heard gunshots. The two men ran back downstairs and left the home. Ms. Fountain went upstairs and discovered her husband on the floor

2

bleeding, and Mr. Hudson lying on the bed. Ms. Fountain called 911 from Mr. Hudson's cell phone.

Upon arrival, Officer Thomas Wehrle noticed the front door "was slightly ajar." He peered inside to see Ms. Fountain "kneeling down on the floor . . . holding a small child, . . . hysterical and crying." Ms. Fountain directed Officer Wehrle to "hurry up," advising that Mr. Hudson and Mr. Fountain were upstairs. Officer Wehrle found Mr. Hudson lying on the bed, bleeding and "gasping for air." He also found Mr. Fountain on the floor "completely unresponsive" and not "breathing, . . . as if he'd been deceased."

Dr. Carol Allan, an Assistant Medical Examiner for the State, performed the autopsy on Mr. Fountain. Dr. Allan testified that Mr. Fountain "sustained two gunshot wounds to his torso, one near his right shoulder and another to his upper abdomen." Dr. Allan determined that the cause of death was gunshot wounds and that "the manner of death [was] homicide."

Chalene Smith, an informant for the Baltimore City Police Department, contacted the Baltimore City police with information related to the crime. Thereafter, the Baltimore City authorities contacted the Baltimore County authorities, sharing Ms. Smith's information. Detective Craig Schrott, a member of the Homicide Unit of the Baltimore County Police Department, interviewed Ms. Smith in September 2006. Detective Schrott testified that, during the course of the investigation, authorities first identified Darnell Smith as a suspect. Authorities "[t]hen [] were able to identify [Petitioner] and Christian Lee[]" as suspects.

3

Detective Gary Childs, also a member of the Homicide Unit, interviewed another witness to the crime, Tori Kucz. Ms. Kucz testified that, on the evening in question, she and Petitioner were running errands. Ms. Kucz and Petitioner "drove around" until they picked up Mr. Smith, Mr. Lee, and Ms. Smith. Ms. Kucz overheard in conversation that Petitioner "didn't like [Mr. Hudson][.]" Ms. Kucz testified that she "knew that we were goin' to do somethin' that shouldn't be happenin'[.] I knew that we were goin' to do somethin' that wasn't right." She testified that they drove to a "liquor store[,]" smoked marijuana, and drove to the Dundalk area near Ms. Fountain's home. According to Ms. Kucz, Petitioner told her to park the car in the alley on Ms. Fountain's street. The group subsequently "walked to a park," where they sat and drank. A few hours later, Petitioner, Mr. Smith, and Mr. Lee told Ms. Kucz and Ms. Smith "to stay there[]" and "that they were gonna be back[.]" Ms. Kucz testified that the men left, "came back shortly thereafter[,]" and "left again."

Ms. Kucz testified that she later had to relieve herself, prompting her and Ms. Smith to walk up the street and "around to the back alley, where [her] car was parked." Ms. Smith "stopped and went to the bathroom first, then further down the alley by [her] car [Ms. Kucz] stopped and" relieved herself. Ms. Kucz testified that, as she was "goin' to the bathroom in the alley," Mr. Lee and Mr. Smith "come runnin' down the alley," screaming to "start the car[.]" According to Ms. Kucz, Mr. Lee and Mr. Smith "were yelling[]" and "anxious or . . . afraid or something." Ms. Kucz started the car, "made a left out of the alley," and a few moments later, picked up Petitioner on the "side of the street[.]" Ms. Kucz testified that, "[w]hen [Petitioner] got in the car, he was fussin' at me because I didn't answer my

4

cell phone[]" and that he yelled at Mr. Smith and Mr. Lee that "nobody was supposed to get shot. Nobody was supposed -- this wasn't supposed to happen." Ms. Kucz explained that:

> [Mr. Lee] . . . was saying he don't know what happened. The man came at him and he just pulled the trigger, that he didn't mean to do it. He kept sayin' that he shot the man, he think he dead. I think I [killed] him, yo. You know that color white? He was that color white they get before they die. . . . [T]his was not supposed to happen, that nobody was supposed to get hurt or die.

The police later searched Mr. Smith's home and uncovered "a gun, ammunition, and a sweatshirt." It was determined that the gun and ammunition recovered were used to shoot and kill Mr. Fountain. Authorities also recovered a cigarette butt from the alley that was "laying on the ground near the fence opening" behind the Fountains' house. A Forensic Technician with the Baltimore County Police Department testified that the cigarette butt was recovered with "other trash and debris in the alley[]" and "was neither wet, dirty[,] or damaged." The DNA on the cigarette butt was later determined to be that of a female, thereby excluding Petitioner as a source of DNA. Detective Michael Forsyth also testified that, on the evening in question, a cell tower "[l]ess than a mile[]" from Ms. Fountain's home intercepted a call from a cell phone associated with Petitioner. Petitioner's DNA was also collected from a hat recovered in the backyard of the Fountains' home. Petitioner was subsequently arrested on September 29, 2006.

### Legal Proceedings

On February 7, 2008, Petitioner was convicted in the Circuit Court for Baltimore County of fourteen counts, including first-degree murder, armed robbery, and first-degree assault. On March 19, the circuit court sentenced Petitioner to life plus 150 years. That

5

same day, Petitioner noted an appeal to the Appellate Court of Maryland.[1]  On April 15, 2010, the Appellate Court affirmed the convictions.

On January 7, 2015, Petitioner filed a Petition for Post-Conviction Relief pursuant to the Uniform Post-Conviction Procedure Act.  *See* Crim. Proc. §§ 7-101–109.  The circuit court conducted a post-conviction hearing on September 24.  On October 27, by way of written memorandum and order, the circuit court denied the petition.  The circuit court explained that:

> Along with the testimony of the firearms expert, and Ms. Kucz's testimony, the [S]tate also relied on DNA evidence and cell phone records to tie the three co-defendants to the crime.  Ultimately this evidence led to the conviction of Petitioner resulting in the Post-Conviction Petition that this court is now addressing.

Petitioner filed leave to appeal, which was denied by the Appellate Court on July 28, 2016.  On August 24, 2022, Petitioner filed the Petition.  Pursuant to Crim. Proc. § 8-201(d)(1)(i), Petitioner asserted that there was a reasonable probability that DNA testing of the cigarette butt from the alley "has the scientific potential to produce exculpatory or mitigating evidence."  The State filed an answer and motion to dismiss on August 30.  On September 5, the circuit court denied the Petition without a hearing or explanation.  On October 3, Petitioner filed a motion for reconsideration.  The circuit court denied the motion on October 27, finding that the Petition "was properly denied."

---

[1] During the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Special Appeals of Maryland to the Appellate Court of Maryland.  The name change took effect on December 14, 2022.

6

On October 10, 2022, Petitioner filed a notice of appeal. By order dated October 27, the Appellate Court transferred Petitioner's appeal to this Court. Petitioner filed a Motion to Supplement the Record on January 24, 2023, whereby he sought to include the transcripts of the police interviews with Ms. Smith and Ms. Kucz. We denied the motion on January 30.[2]

### DISCUSSION

### Standard of Review

This Court "reviews without deference the legal standard that a [circuit] court uses in ruling on a petition[]" for post-conviction DNA testing. *Fuster v. State*, 437 Md. 653, 671, 89 A.3d 1114, 1124 (2014) (citation omitted); *Edwards v. State*, 453 Md. 174, 185, 160 A.3d 642, 649 (2017) ("Because we are asked to interpret the language in the post-conviction DNA testing statute, . . . our review is plenary." (footnote and citations omitted)). "We review a circuit court's determination of whether a reasonable probability exists that the DNA testing has the scientific potential to produce exculpatory or mitigating evidence for clear error." *Givens v. State*, 459 Md. 694, 705, 188 A.3d 903, 909 (2018) (citation omitted). "Under this standard, if there is any competent evidence to support the factual findings below, those findings cannot be held to be clearly erroneous." *Id.*, 188 A.3d at 909 (internal quotation marks and citation omitted).

---

[2] During oral arguments, defense counsel stated that she had the discs containing the transcripts in her possession at the time the Petition was filed.

7

## Parties' Contentions

Petitioner raises two issues on appeal. First, Petitioner reiterates that a "reasonable probability" exists that testing the cigarette butt had the potential to "produce exculpatory evidence[]" relevant to his claim. Petitioner believes that the DNA testing could "implicate and/or provide impeachment evidence" against Ms. Smith and Ms. Kucz before the jury. Petitioner argues that Ms. Smith and Ms. Kucz possessed the "motivation to lie and implicate others to avoid prosecution[.]" According to Petitioner, this would lead "the jury to question their credibility as witnesses, thus making the evidence exculpatory." Petitioner contends that he would not have been convicted, but for Ms. Kucz's testimony.

Second, Petitioner argues that the circuit court erred in dismissing the Petition without conducting a hearing or providing the opportunity to reply to the State's answer to his Petition. Relying on *Blake v. State*, 418 Md. 445, 15 A.3d 787 (2011) ("*Blake II*"), Petitioner maintains that he should "be given an opportunity to respond and challenge the State's representation[]" as a matter of "[f]undamental fairness[.]" He, therefore, believes remand is appropriate.

In response, the State asserts that DNA testing of the cigarette butt would not have resulted in the discovery of exculpatory evidence. Rather, it "may have, at best, amounted to *impeachment evidence* against the credibility of" Ms. Smith and Ms. Kucz—"not exculpatory evidence or mitigating evidence as required for relief under [Crim. Proc.] § 8-201." According to the State, "even if the DNA from the cigarette butt had been tested and determined to match that of either [Ms.] Smith or [Ms.] Kucz, that evidence, as a matter of law, would be neither exculpatory nor mitigating." Furthermore, even if the DNA testing

8

revealed Ms. Kucz or Ms. Smith as "aiders and [abettors] . . . or . . . could have been used to impeach their credibility," such a showing would be "immaterial to the standard of relief under [Crim. Proc.] § 8-201." Such evidence, the State maintains, would not "clear *[Petitioner]* of guilt or tend to establish *his* innocence."

Finally, on the procedural issue, the State contends that both Crim. Proc. § 8-201 and Maryland Rule 4-707 authorize the circuit court, upon consideration of the State's answer, to deny the Petition without a hearing and his response to the State's answer.

**Analysis**

**A.     Crim. Proc. § 8-201: The Post-Conviction DNA Testing Statute**

"[I]n 2001, the General Assembly enacted [Crim. Proc.] § 8-201, which authorizes post-conviction DNA testing." *Givens*, 459 Md. at 706, 188 A.3d at 910. "The General Assembly intended [Crim. Proc. § 8-201] to serve as 'a mechanism for a person who has been convicted of certain serious crimes to obtain exculpatory or mitigating evidence through the DNA testing of items related to that conviction.'" *Id.*, 188 A.3d at 910 (quoting *Simms v. State*, 445 Md. at 163, 167, 126 A.3d at 28 2015)); *Edwards*, 453 Md. at 188, 160 A.3d at 651 ("The statute was enacted . . . to provide an avenue for the exoneration of the actually innocent." (internal quotation marks and citation omitted)).

Crim. Proc. § 8-201(b)(1) provides that "a person who is convicted of a crime of violence[3] . . . may file a petition: [] for DNA testing of scientific identification evidence

---

[3] "Crime[s] of violence" are defined by Md. Code Ann., Criminal Law § 14-101. Petitioner was convicted of fourteen counts, including first-degree murder, armed robbery, and first-degree assault. Petitioner's offenses, by definition, qualify as violent crimes under Crim. Proc. § 8-201. *See id.* § 14-101.

9

that the State possesses that is related to the judgment of conviction[.]"   "Scientific

identification evidence" is defined as evidence that:

> (i)   is related to an investigation or prosecution that resulted in a judgment of conviction;
>
> (ii)  is in the actual or constructive possession of a law enforcement agency or agent of a law enforcement agency; and
>
> (iii) contains biological evidence from which DNA may be recovered that may produce exculpatory or mitigating evidence relevant to a claim of a convicted person of wrongful conviction or sentencing if subject to DNA testing.

*Id.* § 8-201(a)(5).[4]  Under Crim. Proc. § 8-201(d), a court must "order DNA testing if the

petitioner demonstrates that two conditions are met." *Givens*, 459 Md. at 707, 188 A.3d at

910 (citation omitted).  First, a court must find "a *reasonable probability* exists that the

DNA testing has the scientific potential to produce *exculpatory or mitigating evidence*

relevant to a claim of wrongful conviction or sentencing[.]"  Crim. Proc. § 8-201(d)(1)(i)

(emphasis added).  Second, a court must also find that "the requested DNA test employs a

method of testing generally accepted within the relevant scientific community."  *Id*. § 8-

201(d)(1)(ii).

If it is determined that "'a *genuine* factual issue as to whether the evidence exists,

ordinarily the court should hold a hearing.'" *Brown v. State*, 470 Md. 503, 546, 236 A.3d

488, 512 (2020) (quoting *Arey v. State*, 400 Md. 491, 507, 929 A.2d 501, 510 (2007)).  "If

---

[4] The cigarette butt at issue "meet[s] the statutory definition of 'scientific identification evidence.' . . . [This] item[] [is] related to the investigation of [Petitioner] to the extent that the police collected th[is] item[] from the scene of crime for processing." *Edwards*, 453 Md. at 190 n.13, 160 A.3d at 652 n.13 (citations omitted).

10

the results of the post[-]conviction DNA testing are unfavorable to the petitioner, the court shall dismiss the petition." Crim. Proc. § 8-201(i)(1). A petitioner "has a direct right of appeal to this Court in cases involving post[-]conviction petitions for DNA testing[.]" *Fuster*, 437 Md. at 663 n.2, 89 A.3d at 1120 n.2 (citing Crim. Proc. § 8-201(k)(6)).

## B. The Exculpatory or Mitigating Evidence

Against this backdrop, we first address the issue of whether a "reasonable probability exists" that the requested testing of the cigarette butt "has the scientific potential to produce exculpatory evidence relevant to" Petitioner's claim. *Edwards*, 453 Md. at 190, 160 A.3d at 652. We hold that, as a matter of law, the facts alleged do not afford Petitioner relief.

As an initial matter, Petitioner is correct that he need not show that the DNA testing has a reasonable probability to exonerate him under Crim. Proc. § 8-201(d)(1)(i). We have held that, under Crim. Proc. § 8-201(d)(1)(i), "a 'reasonable probability' requires *more than mere possibility*, rather, it is a *fair likelihood that something is true*." *Givens*, 459 Md. at 707, 188 A.3d at 910 (emphasis added) (citing *Beaman v. State*, 453 Md. 407, 420, 162 A.3d 864, 872 (2017)). As we explained in *Givens*:

> The petitioner's burden to demonstrate a reasonable probability that the evidence would be exculpatory does **not** require "establish[ing] that the result would have been different if the DNA results sought were known at the time of trial." The results need not exonerate the petitioner or prove that someone else committed the crime. Rather, "exculpatory" in [Crim. Proc.] § 8-201 means only "evidence that would **tend to** clear the accused of guilt, or **tend to** establish his or her innocence." To satisfy his burden, [the petitioner] must demonstrate that the testing he seeks has the scientific potential to produce evidence that would tend to show that he did not commit the crime, or that he is innocent.

11

*Id.* at 707–08, 188 A.3d at 910–11 (internal citations omitted). As such, Petitioner must demonstrate that there is a reasonable probability that the testing of the cigarette butt "has the scientific potential" to produce exculpatory or mitigating evidence "that would tend to show that he did not commit the crime[.]" *Id.*, 188 A.3d at 910–11 (internal citations omitted); *Edwards*, 453 Md. at 196, 160 A.3d at 655 ("We thus hold that 'exculpatory' under [Crim. Proc.] § 8-201(d)(1) means evidence that would tend to clear the accused of guilt, or tend to establish his or her innocence.").

Furthermore, "[i]n assessing whether there is a reasonable probability that DNA testing may produce exculpatory or mitigating evidence," a court may consider the following non-exhaustive factors: (1) "the nature of the item (e.g., whether it is an instrumentality of the crime)," (2) "the physical proximity between where the item was located and where the crime occurred," and (3) "the temporal proximity between when the perpetrator touched the item and when the crime occurred." *Edwards*, 453 Md. at 199, 160 A.3d at 657. "Other relevant factors include the temporal proximity between the crime and the discovery of the item, the condition of the item, and the evidence the jury heard regarding that item." *Givens*, 459 Md. at 714, 188 A.3d at 914 (citation omitted). "To assess whether a reasonable probability exists that test results could produce exculpatory or mitigating evidence, a court must examine the facts of the crime, as well as the petitioner's assertions." *Id.*, 188 A.3d at 914 (citations omitted).

Applying *Edwards* and *Givens* to the instant case, we conclude that Petitioner has failed to establish that DNA testing of the cigarette butt is warranted. While the cigarette butt was within "physical proximity" to the crime, it was not an "instrumentality of the

12

crime" nor touched by any of the three men who unlawfully entered the Fountains' home. *See Edwards*, 453 Md. at 199–200, 160 A.3d at 657 (finding reasonable probability where the item requested for DNA testing was within "physical proximity" of the crime and handled by the perpetrator immediately before the crime occurred).

Assuming, *arguendo*, the DNA testing of the cigarette butt matched with either Ms. Kucz's or Ms. Smith's DNA, Petitioner contends that this match "would have drawn the jury to question their credibility as witnesses, thus making the evidence exculpatory." We disagree. As the State recalls, the defense questioned "[t]he credibility of both women . . . at trial. Ms. Kucz was vigorously cross-examined by the defense." While Ms. Smith did not testify at trial, "defense counsel emphasized [their] alleged 'motivation to lie'[5] about the events in question." As the State observes, both the jury and the court were "well aware" of Petitioner's involvement in the crimes and that, on the night in question, both Ms. Kucz and Ms. Smith smoked and walked through the alley. Ms. Kucz's testimony placed her and Ms. Smith at the scene of the crime. Ms. Kucz also testified that she and Ms. Smith smoked on the night in question. The DNA on the cigarette butt was determined to be that of a woman; therefore, the jury and the court knew that Petitioner was excluded as a DNA source. Contrary to Petitioner's contentions, finding Ms. Kucz's or Ms. Smith's

---

[5] Petitioner is the father of Ms. Kucz's children. While Ms. Kucz "love[s]" Petitioner, Ms. Kucz testified that she "was involved in somethin' that I shouldn't have been involved in. . . . [T]his man died . . . and I was close to that. . . . I'm hopin' this will [] put me at peace[.]" Additionally, Ms. Kucz testified knowing that she "could still be charged in this case."

13

DNA on the cigarette butt would not undermine their credibility because such a DNA result would position them exactly where Ms. Kucz's testimony already placed them.

Even if the DNA evidence on the cigarette butt had been a match with either Ms. Kucz's or Ms. Smith's DNA, it would not have tended to "disprove or negate" *Petitioner's* guilt. *Id*. at 200, 160 A.3d at 657; *Givens*, 459 Md. at 716, 188 A.3d at 915 (noting that "[t]he absence of DNA does not tend to clear *[Petitioner]* of guilt or establish that he was innocent." (emphasis added)). Finding either of their DNA on the cigarette butt "is not exculpatory **or** inculpatory." *Givens*, 459 Md. at 715, 188 A.3d at 915. Ms. Fountain and Mr. Hudson both testified that three men were at the scene of the crime and entered the Fountains' home, including Petitioner. It follows that the DNA testing of the cigarette butt from a female would not exculpate *Petitioner* from being present at the scene.

Again, a Forensic Technician with the Baltimore County Police Department testified that the cigarette butt was recovered with "other trash and debris in the alley[]" and "was neither wet, dirty[,] or damaged." The cigarette butt was "laying on the ground near the fence opening behind the vehicle parked in the backyard[]" of the Fountains' house. The technician verified that there were a "group of homes[]" within the vicinity of the alley. It is possible that the cigarette butt belonged to someone else entirely. *See id.* at 716, 188 A.3d at 915. As we stated in *Givens*, "[f]inding a third party's DNA would not suggest that someone else committed the crime[.]" *Id.*, 188 A.3d at 915. "At best, this result could indicate that there was another individual . . . in [the alley] at some unknown time, and [] that individual also came into contact with [the cigarette butt] at some other unknown time." *Wallace v. State*, 452 Md. 558, 578, 158 A.3d 521, 532 (2017).

14

There are several "logical explanations" for why DNA testing of the cigarette butt *would not* produce exculpatory or mitigating evidence. *Givens*, 459 Md. at 717, 188 A.3d at 916. "'[T]here is enough other incriminating evidence and an explanation for the DNA result[]'" to establish Petitioner's guilt. *Id.*, 188 A.3d at 916 (quoting *Dist. Atty's Off. for the Third Jud. Dist. v. Osborne*, 557 U.S. 52, 62, 129 S. Ct. 2308, 2316 (2009)). It follows that Petitioner "has failed to show that there is a reasonable probability that the results of any testing . . . would be exculpatory or mitigating[]" under Crim. Proc. § 8-201(d)(1)(i). *Id.*, 188 A.3d at 916. Rather, "[i]t simply maintains the status quo." *Id.* at 716, 188 A.3d at 915. We, therefore, conclude that Petitioner is not entitled to testing under Crim. Proc. § 8-201(d)(1)(i).

### C. Crim. Proc. § 8-201's Procedural Requirements

We next address whether the circuit court erred in dismissing the Petition without: (1) providing Petitioner the "opportunity to respond to the State's reply[]" and (2) "granting a hearing[.]" For the reasons that follow, we affirm the circuit court's denial of the Petition.

"Maryland Rules 4-701 *et seq.* govern post-conviction DNA testing procedures." *Edwards*, 453 Md. at 189 n.12, 160 A.3d at 651 n.12; *Wallace*, 452 Md. at 579 n.9, 158 A.3d at 533 n.9; *Simms*, 445 Md. at 167, 126 A.3d at 28 ("In 2009, this Court adopted rules to govern proceedings under the statute. Maryland Rules 4-701 *et seq.*"); *Jackson v. State*, 448 Md. 387, 399, 139 A.3d 976, 983 (2016). Maryland Rule 4-701 explicitly states that "[t]he Rules in this Chapter apply to proceedings filed under [Crim. Proc.] § 8-201."

Maryland Rule 4-704(a) defines the content required for a post-conviction DNA petition. Specifically, Maryland Rule 4-704(a)(2) states that:

15

If the request is for DNA testing of scientific identification evidence, the petition shall contain:

(A) a description of the specific scientific identification evidence that the petitioner seeks to have tested;

(B) a statement of the factual basis for the claims that (i) the State possesses that evidence or is able to acquire it from a third party on its own initiative or by court order, (ii) the evidence is related to the conviction, including a concise description of how the evidence is related to the conviction, and (iii) *a reasonable probability exists that the requested DNA testing has the scientific potential to produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction or sentencing*; and

(C) to the extent known: (i) a description of the type of DNA testing the petitioner seeks to employ and (ii) a statement of the basis for a claim that the DNA testing method has achieved general acceptance within the relevant scientific community.

(Emphasis added). The State is required to file an answer "no later than the later of 60 days after the State's Attorney receives notice of the filing or transfer of the petition or 60 days after the court denies a motion to transfer." Md. Rule 4-706(a), (c)(1). "Upon consideration of the State's answer, the court *may* deny the petition if it finds as a matter of law that (1) the petitioner has no standing[6] or (2) the facts alleged in the petition do not entitle the petitioner to relief." Md. Rule 4-707(a) (emphasis added). Under Maryland Rule 4-708, a "petitioner *may* file a response to the [State's] answer no later than 60 days after the later of service of the State's answer or entry of an order appointing counsel pursuant to Rule 4-707 . . . ." (Emphasis added). A petitioner's response to an answer "*may*[:] (1) challenge the adequacy or [] accuracy of the answer, (2) request that a search

---

6 The State does not dispute that Petitioner has standing.

16

of other law enforcement agency databases or logs be conducted . . . , and (3) be accompanied by an amendment to the petition." *Id*. (emphasis added).

Maryland Rule 4-709 explains when a court is and is not required to hold a hearing and when a hearing is discretionary under Crim. Proc. § 8-201. *See also Jackson*, 448 Md. at 408, 139 A.3d at 988. Maryland Rule 4-709 provides, in relevant part:

> **(a) When Required.** Except as otherwise provided in subsection (b)(2) of this Rule, the court shall hold a hearing if, from the petition, answer, and any response, the court finds that the petitioner has standing to file the petition and the petition is filed in the appropriate court, and finds one of the following:
>
> (1) specific scientific identification evidence exists or may exist that is related to the judgment of conviction, a method of DNA testing of the evidence may exist that is generally accepted within the relevant scientific community, and *there is or may be a reasonable probability that the testing has the scientific potential to produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction or sentencing[.]*
>
> * * *
>
> **(b) When Not Required.**
>
> (1) *For Denial of Petition*. The court shall deny the petition *without a hearing* if it finds that:
>
> (A) the petitioner has no standing to request DNA testing or a search of a law enforcement agency DNA database or logs; or
>
> (B) *as a matter of law, the facts alleged in the petition pursuant to subsections (a)(2) and (3) of [Md.] Rule 4-704 do not entitle the petitioner to relief under [Crim. Proc.] § 8-201*.
>
> * * *
>
> **(c) When Hearing Is Discretionary.** In its discretion, the court may hold a hearing when one is not required.

17

(Emphasis added). Finally, under Maryland Rule 4-709(e), "[i]f the court declines to hold a hearing, it *shall* enter a written order *stating the reasons why no hearing is required*." (Emphasis added).

### 1. Petitioner's Entitlement to a Hearing

We first determine whether Petitioner was entitled to a hearing. Maryland Rule 4-704(a)(2)(B)(iii) provides that "the petition shall contain: . . . a statement of the factual basis for the claim[] that . . . a reasonable probability exists that the requested DNA testing has the scientific potential to produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction or sentencing[.]" A court is required to order DNA testing if it finds that "a reasonable probability exists that the DNA testing has the scientific potential to produce exculpatory or mitigating evidence[.]" Crim. Proc. § 8-201(d)(1)(i). We have repeatedly recognized that Crim. Proc. § 8-201 is silent with respect to when a hearing is required upon the filing of a petition requesting DNA testing.[7] *Gregg v. State*, 409 Md. 698, 717, 976 A.2d 999, 1009 (2009) ("[Crim. Proc. §] 8-201 does not mandate a hearing on a petition brought under [Crim. Proc.] § 8-201." (citation omitted)); *Arey*, 400 Md. at 506, 929 A.2d at 510 (footnote and citation omitted); *Blake v. State*, 395 Md. 213, 224, 909 A.2d 1020, 1026 (2006) ("*Blake I*"). However, pursuant to Maryland Rule 4-709(b)(1)(B), "[t]he court shall deny the petition without a hearing if it finds that[,] . . . as a matter of

---

[7] A hearing is explicitly required under Crim. Proc. § 8-201(j)(3) and (k)(4). However, these provisions only apply where the State either: (1) "is unable to produce scientific identification evidence" or (2) provides "notice that it intends to dispose of scientific identification evidence[.]" Crim. Proc. § 8-201(j)(3), (k)(4). Neither apply in the instant case.

18

law, the facts alleged in the petition pursuant to . . . [Maryland] Rule 4-704 do not entitle the petitioner to relief under [Crim. Proc.] § 8-201." *See also Jackson*, 448 Md. at 408, 139 A.3d at 988. "Essentially, then, . . . a petitioner *may* be entitled to a hearing . . . if 'there may be a reasonable probability' that the [] DNA testing [] has 'the scientific potential to produce exculpatory or mitigating evidence . . . [.]'" *Id.* at 410, 139 A.3d at 989 (quoting Md. Rule 4-709(a)(1)) (emphasis added).

We established in Section A that Petitioner fails to show that there is a reasonable probability that the DNA testing of the cigarette butt would be exculpatory or mitigating under Crim. Proc. § 8-201(d)(1)(i). *See Givens*, 459 Md. at 716, 188 A.3d at 916. Again, "'there is enough other incriminating evidence and an explanation for the DNA result[]'" to establish Petitioner's guilt. *Id.* at 717, 188 A.3d at 916 (quoting *Osborne*, 557 U.S. at 62, 129 S. Ct. at 2316). Petitioner's "assertions in this case do not come close to satisfying the standard under [Crim. Proc.] § 8-201 for ordering DNA testing." *Beaman*, 453 Md. at 422, 162 A.3d at 873. Accordingly, the circuit court was not required to hold a hearing prior to denying the Petition. Md. Rule 4-709(b)(1)(B). We, therefore, determine that the Petition was properly denied without a hearing by the circuit court.

### 2. Petitioner's Entitlement to a Response and the Circuit Court's Consideration of Such Response

We next consider whether the circuit court erred by not providing Petitioner the opportunity to reply to the State's answer to his Petition. This Court "interprets a Maryland Rule by using the same canons of construction that the [C]ourt uses to interpret a statute." *Fuster*, 437 Md. at 664, 89 A.3d at 1120 (citation omitted). We "begin[] with the text of

19

the rule and give[] the relevant words their ordinary meaning in the context of the rule as a whole and the larger set of rules of which that rule is part." *Admin. Off. of the Cts. v. Abell Found.*, 480 Md. 63, 83, 279 A.3d 976, 987 (2022). "If there is ambiguity in either the language itself or its application to the circumstances at hand, the history of the adoption of the rule can be instructive as to the purpose of the rule." *Id.*, 279 A.3d at 987. "This Court may use legislative history as a 'check' on its plain text interpretation." *Elsberry v. Stanley Martin Companies, LLC*, 482 Md. 159, 190, 286 A.3d 1, 19 (2022) (citations omitted). In ascertaining the plain meaning of the rule, we do not look to the rule's language alone. *See id.* at 179, 286 A.3d at 12 (citation omitted); *Fuster*, 480 Md. at 664, 89 A.3d at 1120 (citation omitted). Instead, as we explained in *Fuster*:

> [We] consider[] the Rule's plain language in light of: (1) "the [] scheme to which [the Rule] belongs"; (2) "the purpose, aim, or policy of [this Court] in [adopt]ing the" Rule; and (3) the "presum[ption] that [this Court] intends [the Rules and this Court's precedent] to operate together as a consistent and harmonious body of law[.]"

437 Md. at 664, 89 A.3d at 1120 (quoting *Lowery v. State*, 430 Md. 477, 496, 61 A.3d 794, 806 (2013)). "If the [r]ule's plain language 'is unambiguous and clearly consistent with the [rule]'s apparent purpose,' the [C]ourt applies the [r]ule's plain language[,]" unless doing so constructs an absurd result. *Id.* at 664–65, 89 A.3d at 1120 (quoting *State v. Weems*, 429 Md. 329, 337, 55 A.3d 921, 926 (2012)); *Hurst v. State*, 400 Md. 397, 417, 929 A.2d 157, 168 (2007); *Burson v. Simard*, 424 Md. 318, 324, 35 A.3d 1154, 1157 (2012) (citation omitted). If the rule's plain language is ambiguous, we resolve the ambiguity by:

> "search[ing] for [rulemaking] intent in other indicia, including the history of the [rule] or other relevant sources intrinsic and extrinsic to the [rulemaking] process[,]" in light of: (1) "the structure of the" [r]ule; (2) "how the [r]ule

20

relates to other laws"; (3) the [r]ule's "general purpose"; and (4) "the relative rationality and legal effect of various competing constructions."

*Fuster*, 437 Md. at 665, 89 A.3d at 1120 (quoting *State v. Johnson*, 415 Md. 413, 422, 2 A.3d 368, 373 (2010)). "In addition, one may look to the ramifications of the possible alternative interpretations of the language in question." *Abell Found.*, 480 Md. at 83, 279 A.3d at 987 (citation omitted).

### a. Text of Maryland Rules 4-707 and 4-708

As previously noted, Maryland Rule 4-707(a) states, in part, that "[u]pon consideration of the State's answer, the court may deny the petition if it finds as a matter of law that . . . the facts alleged in the petition do not entitle the petitioner to relief." Maryland Rule 4-707(a)'s plain language does not require or mandate the circuit court to consider or await *Petitioner's reply* to the State's answer prior to ruling on the petition. Instead, it provides the court the discretion to deny the Petition "[u]pon consideration of *the State's answer*[]" on the grounds specified in the rule. (Emphasis added). In other words, the court need only consider the Petition and the State's answer to the Petition prior to denying a petition. Maryland Rule 4-707(a) does not confer upon Petitioner the right or need to reply to the State's answer. The plain language of Maryland Rule 4-707(a), considered in isolation, is unambiguous. However, we do not read Maryland Rule 4-707 in isolation. *See Fuster*, 437 Md. at 664, 89 A.3d at 1120.

Maryland Rule 4-708 permits a petitioner to file a response to the State's answer as follows:

> The petitioner may file a response to the answer no later than 60 days after the later of service of the State's answer or entry of an order appointing

21

counsel pursuant to [Md.] Rule 4-707. The response may (1) challenge the adequacy or the accuracy of the answer, (2) request that a search of other law enforcement agency databases or logs be conducted for the purpose of identifying the source of physical evidence used for DNA testing, and (3) be accompanied by an amendment to the petition. The petitioner shall serve the response on the State's Attorney.

Maryland Rule 4-708 permits a petitioner to file a response to the State's answer within the time period established, and for the reasons outlined in the rule. Like Maryland Rule 4-707, Maryland Rule 4-708 neither expressly requires a court to await or consider a response from a petitioner prior to ruling on a petition. Read in isolation, however, the plain language of Maryland Rule 4-708 suggests that a petitioner has the right to file a response.

We acknowledge that the language in Maryland Rules 4-707 and 4-708 provides "two or more possible alternative interpretations . . . for the purposes of rule construction." *Worsham v. Greenfield*, 435 Md. 349, 361–62, 78 A.3d 358, 366 (2013) (citation omitted). Our review persuades us that Maryland Rule 4-707(a) "become[s] ambiguous when considered together with" Maryland Rule 4-708. *Green v. State*, 456 Md. 97, 141, 171 A.3d 1162, 1187 (2017). Because the plain language of the rules is inconsistent, "we 'search[] for [rulemaking] intent in other indicia[.]'" *Fuster*, 437 Md. at 667, 89 A.3d at 1122 (quoting *Johnson*, 415 Md. at 422, 2 A.3d at 373).

### b. *History of Maryland Rules 4-707 and 4-708*

In *Administrative Office of the Courts v. Abell Foundation*, we enumerated various "items" that can constitute "[t]he 'legislative history' of a Maryland Rule[:]"

- The original and amended versions of the particular rule.

22

- The record of any deliberations of the [Supreme Court] at the open meeting at which the rule was considered and after which the Court adopted the rule.

- Committee Notes of the Standing Committee of Rules of Practice and Procedure [("Rules Committee")[8]] . . . , as adopted by [this Court] and codified with various versions of the particular rule.

- Source Notes, published with a rule, that direct a reader to a predecessor rule or other source, if any, from which the rule was derived.

- Reports by the Rules Committee submitted to the [Supreme Court], which contain proposed rules, and the cover letters of the Chair of the Rules Committee explaining the purpose and design of the proposed rules.

- Reporter's Notes, which are not adopted by the Committee and are not regarded as an official interpretation of proposed rules but which convey to the Court some of the research and rationale behind proposed rules.

- Minutes of Rules Committee meetings and deliberations concerning its proposals and the reports and minutes of subcommittees and other committees appointed to address a particular subject.

480 Md. at 86–87, 279 A.3d at 989–90 (footnotes omitted).  We turn to the history of the rules and the minutes of the Rules Committee to assist in resolving this ambiguity.  *See Long v. State*, 343 Md. 662, 668, 684 A.2d 445, 448 (1996) (citations omitted).

According to the minutes of the Rules Committee's June 19, 2009, meeting (the "Rules Committee Minutes"), "[Maryland] Rule 4-707 has been placed in front of

---

[8] We "created the Rules Committee to assist the Court in the exercise of its constitutional rulemaking powers[,]" which includes the consideration and adoption of rules.  *Abell Found.*, 480 Md. at 87 n.25, 279 A.3d at 989 n.25 (citing Md. Rule 16-701); *Murphy v. Liberty Mut. Ins. Co.*, 478 Md. 333, 342 n.3, 274 A.3d 412, 417 n.3 (2022).  The Rules Committee "consists of judges, court officials, lawyers, and others with interest and expertise in the subject matter of court rules."  *Abell Found.*, 480 Md. at 87 n.25, 279 A.3d at 989 n.25 (citing *Murphy*, 478 Md. at 342 n.3, 274 A.3d at 417 n.3).

[Maryland] Rule 4-708, 'Response to Answer,' and it is new."  Rules Committee Minutes, pg. 94, *archived at* https://perma.cc/7JDJ-QY7Z.  Maryland Rule 4-707(a) "pertains to the denial of the petition.  *There can be a denial of the petition on its face*.  The Rule incorporates the appointment of counsel at this stage of the proceedings."  *Id.* (emphasis added).

The Rules Committee Minutes indicate that there were "two questions[]" before the Rules Committee regarding Maryland Rule 4-707: (1) "whether the word 'find' should be changed to the word 'determine[]'" and (2) "*whether the court is able to deny the petition before the response is filed*."  *Id.* at 98 (emphasis added).  In an effort to "figure out how this [rule] would work[,]" a Rules Committee member noted that:

> Section (a) provides: ". . . if it [the court] finds as a matter of law . . . ".  The more correct language would be if the court "concludes" or "determines" as a matter of law.  [He] added that he did not think that the Rule should imply that the court is making a factual finding, but if the court is making a factual finding, it is not fair to do this unless the petitioner is able to file a response.[9] *The language in the Rule is somewhat ambiguous*.

*Id.* at 95 (emphasis added).  In response, the Rules Committee Chair offered that:

> [T]he Committee and the Subcommittee had discussed the problem that the petition may be lacking in a number of respects *simply because the petitioner is unrepresented.  Once the State files an answer, it may be clear as a matter of law that the petitioner does not have standing or may not have been convicted of the appropriate crime.  The petition can be dismissed, and it is not a fact issue*.  Unless the petition can be dismissed, counsel should be appointed to represent the petitioner before the response is due.  The response is going to have to address whatever the State is saying and straighten out the

_____

[9] In *Simms v. State*, this Court reiterated this notion and stated that "[s]hould any disputes arise from the parties' submissions that are material to the disposition of the petition, then the court must hold a hearing to resolve the disputes and make any necessary findings of fact, before ruling on the petition."  409 Md. 722, 734, 976 A.2d 1012, 1020 (2009) (citations omitted).

24

petition which may be lacking in detail. It would be difficult for the petitioner to do this without the help of an attorney. That is why section (b) was included.

*Id.* at 95–96 (emphasis added). Similarly, another Committee member "commented that the petition may not have what is necessary to go forward . . . because the petitioner does not have sufficient facts[.]" *Id.* at 97. Ultimately, "[n]o change was recommended by the Committee." *Id.* at 98. The Rules Committee approved Maryland Rule 4-707 by consensus. *Id.*

The Committee then "presented [Maryland] Rule 4-708, Response to Answer, for the Committee's consideration." *Id.* As previously explained, "[Maryland] Rule 4-708 had formerly been [Maryland] Rule 4-707, but because the Rule providing for counsel was included, this Rule has been moved back." *Id.* at 99. As the Rules Committee Minutes detail:

> When there is an answer to be filed, an attorney will have been appointed to represent the petitioner, or the petitioner will have elected not to have an attorney. The court is going to appoint someone as counsel, but the language in the Rule provides that the appointment can be rejected. . . . *If counsel is appointed, and the petitioner accepts counsel, there is a period of 60 days after the later of service of the State's answer or entry of an order appointing counsel for a response to the State's answer to be filed.* The petitioner *may* file a response . . . . The provision in the Rule that pertained to the appointment of counsel has been deleted, because the issue of appointment of counsel has been moved to [Maryland] Rule 4-707.

*Id.* (emphasis added). The Rules Committee approved the amended Maryland Rule 4-708 by consensus. *Id.* at 100.

The discussion by the Rules Committee surrounding Maryland Rules 4-707 and 4-708 reflects a clear concern regarding whether an indigent petitioner is represented by

counsel. Specifically, the Rules Committee is cognizant of situations where a "petition *may be lacking in a number of respects simply because the petitioner is unrepresented.*" *Id.* at 96 (emphasis added). This is an example of when Maryland Rule 4-708 applies. Maryland Rule 4-708 provides a petitioner the ability to respond to the State's answer for specific purposes: (1) to "challenge the adequacy or the accuracy of the answer," (2) to request that a search of other law enforcement agency databases or logs be conducted, or (3) to amend the petition. On the other hand, the Rules Committee recognized that there may be circumstances where it is clear, once the State files its answer, that a petition is factually insufficient. Rules Committee Minutes, pg. 96. In such circumstance, a court can dismiss a petition "and it is not a fact issue." *Id.*

Based upon our review of the proceedings before the Rules Committee, the issue of whether a court can deny a petition before a petitioner files a response was considered. *Id.* at 98. A Rules Committee member expressed concern regarding the ambiguity surrounding the rules' language. *Id.* at 95. Despite this, the Rules Committee did not alter the proposed language before presenting it to this Court for adoption. This Court adopted Maryland Rules 4-707 and 4-708 as recommended by the Rules Committee.

From our perspective, the history of Maryland Rules 4-707 and 4-708 reinforces our conclusion that the rules allow Petitioner the opportunity to respond to the State's answer for the purposes enumerated under Maryland Rule 4-708; however, the court is not required to wait until Petitioner files a response, or until the expiration of Petitioner's response time, prior to denying the Petition where the grounds outlined in Rule 4-707(a) are satisfied. The

court needs to only consider the State's answer under Maryland Rule 4-707(a).[10] *Fuster*, 437 Md. at 668, 89 A.3d at 1122.

While Maryland Rules 4-707 and 4-708 are separate rules, they both apply to post-conviction DNA testing under Crim. Proc. § 8-201 and fall within Title 4, Chapter 700 of the Maryland Rules. *See Green*, 456 Md. at 141, 171 A.3d at 1187. Our interpretation, therefore, ensures that Maryland Rule 4-708 is "consistent and harmonious" with Maryland Rule 4-707. *Fuster*, 437 Md. at 668, 89 A.3d at 1123 (internal quotation marks and citation omitted). In sum, the plain language and history of Maryland Rules 4-707(a) and 4-708 compel our holding that Maryland Rule 4-707(a) neither requires the circuit court to await or consider Petitioner's response nor entitles Petitioner to a response. "Whether to change course . . . is a matter that should be taken up by the Rules Committee[.]" *Abell Found.*, 480 Md. at 120, 279 A.3d at 1009 (Biran, J., dissenting).

### c. Application to Petitioner's Request to Respond

Pursuant to Maryland Rule 4-704(a)(2), Petitioner requested DNA testing of the cigarette butt on the basis that there was a reasonable probability that the testing would have the scientific potential to produce exculpatory evidence. The State filed a timely answer and motion to dismiss. Upon consideration of the State's answer, the circuit court

---

[10] We recognize that there may be an instance where a petitioner seeks to raise a Maryland Rule 4-708 issue, but their petition for post-conviction DNA testing was already denied under Maryland Rule 4-707(a). In this scenario, the petitioner could seek reconsideration by stating the intent to file a response under Maryland Rule 4-708. As the interpretation of Maryland Rule 4-708 is concerned, however, we shall refer the matter to the Rules Committee, "which will be in a position to reexamine and clarify the Rule in light of this case[.]" *State v. Matthews*, 415 Md. 286, 298, 999 A.2d 1050, 1057 (2010) (citation omitted).

27

denied the Petition because, as a matter of law, the facts alleged did not entitle Petitioner to relief. Under Rule 4-707(a), the court was permitted to deny the Petition upon consideration of the State's answer upon a determination that "the facts alleged in the [P]etition [did] not entitle Petitioner to relief."

Petitioner filed a Motion for Reconsideration on October 3, 2022, which the State opposed. Petitioner did not contend that any of the enumerated purposes in Maryland Rule 4-708 applied or entitled him to a response. Upon consideration of both the Motion for Reconsideration and the State's answer thereto, the circuit court denied Petitioner's motion, finding that the "Petition . . . was properly denied." The trial judge who denied the Petition is the same judge who presided over Petitioner's post-conviction proceedings. Under the procedural history involved in this case, even though the court was not required to wait for a response by the Petitioner to the State's answer, we observe that the motion for reconsideration effectively served as Petitioner's opportunity for response. *Motion for Reconsideration*, *Black's Law Dictionary* (11th ed. 2019) ("A party's request that the court allow another hearing of a case, motion, or appeal . . . to consider an alleged error or omission in the court's judgment or opinion."). Therefore, the circuit court was not required to consider Petitioner's reply nor was Petitioner entitled to submit one.

Despite Petitioner's contentions, *Blake II* does not apply. In *Blake I*, this Court held that the circuit court erred by "summarily dismissing appellant's petition for post[-]conviction DNA testing[,]" 395 Md. at 222, 909 A.2d at 1025, because the State's response to the appellant's petition was "insufficient[.]" *Blake II*, 418 Md. at 448, 15 A.3d at 789 ("[A] remand for further proceedings was required as a result of the State's

28

insufficient response to [a]ppellant's petition[.]").  Specifically, the State's answer

represented that certain evidence was "unavailable[]" and "no longer exist[ed][.]" *Id.*, 15

A.3d at 789.  In that specific circumstance, we held that "[a] petitioner has a right to notice

and opportunity to contest the State's representation that the evidence is unavailable." *Id.*,

15 A.3d at 789 (citation omitted).  That is not the case before us.[11]  The State did not allege

that the cigarette butt was not available for DNA testing.  In fact, the State did the *exact*

*opposite*—it tested the cigarette butt.

### 3.  Sufficiency of the Circuit Court's Order

Finally, we review the circuit court's order denying the Petition without explanation.

Under Maryland Rule 4-709(e), if a court "declines to hold a hearing, it *shall* enter a written

order *stating the reasons why no hearing is required*."  (Emphasis added).  On September

5, 2022, the circuit court denied the Petition without an explanation.  Although the circuit

court failed to comply with Maryland Rule 4-709(e), remand would be futile.  *See Jackson*,

448 Md. at 411, 139 A.3d at 990 ("[W]e choose not to remand for inclusion of further

findings [] because of the obvious futility of [Petitioner's] assertions.").  This is not a case

where the court erroneously "applied a more stringent standard" than required.  *Edwards*,

453 Md. at 200, 160 A.3d at 657.  Nor do the facts alleged in the Petition "come close to

satisfying the standard under [Crim. Proc.] § 8-201 for ordering DNA testing." *Beaman*,

453 Md. at 422, 162 A.3d at 873; *see also Edwards*, 453 Md. at 199, 160 A.3d at 657

(holding that the petition satisfied Crim. Proc. § 8-201(d) to warrant DNA testing and

---

[11] Notably, the applicable rules did not exist at the time of *Blake I*, so that case did not involve an interpretation of the relevant rules.  For that reason, it is also inapposite here.

29

remanding for the circuit court to direct DNA testing).  We, therefore, find "no reason to remand this case for further proceedings" and affirm the circuit court's denial of the Petition.[12]  *Beaman*, 453 Md. at 422, 162 A.3d at 873.

## CONCLUSION

We hold that Petitioner has failed to establish that a reasonable probability exists that the DNA testing of the cigarette butt has the scientific potential to produce exculpatory or mitigating evidence.  The record and testimony reflect that any results of testing the cigarette butt would not produce exculpatory or mitigating evidence.  Accordingly, we affirm the judgment of the Circuit Court for Baltimore County.

> **JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY IS AFFIRMED.  COSTS TO BE PAID BY PETITIONER.**

---

[12] When a court denies a petition without a hearing, the court must provide a written explanation for the basis of its denial under Maryland Rule 4-709(e).  While we do not enforce this requirement here, the failure to comply may, if not followed in the future, be grounds for reversal.

30

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/coa/10a22mcn.pdf